### CALAMIA v. MAYER et al. *

No. 16643.

Court of Appeal of Louisiana. Orleans.

May 31, 1937.

*Rehearing denied June 14, 1937.

Benj. Y. Wolf, of New Orleans, for appellants.

Adam H. Harper and Alexander C. Granzin, both of New Orleans, for appellee.

JANVIER, Judge.

Mrs. Laura Calamia, wife of Benny Vachetta, on May 17, 1935, while riding in an automobile owned and operated by Carlo Billo, received injuries as the result of a collision at the corner of Royal and Governor Nicholls streets with another automobile owned and driven by Gilbert Bearard. Seeking recovery for her injuries, which she alleged were caused entirely by the negligence of Bearard, she prayed for judgment against him and also against National Hosiery Mills, averring that the said secondly-named defendant was a corporation and that Bearard was acting within the scope of his employment by it. The National Hosiery Mills proved to be a partnership and the suit as against it was dismissed, as was also the claim against Bearard. On appeal we reversed the judgment which had been in Bearard's favor and rendered a decree in favor of plaintiff for $150. See Calamia v. National Hosiery Mills et al. (La.App.) 164 So. 146. Apparently plaintiff could not collect the amount of the judgment, so she attempted again to secure a judgment against the employers of Bearard, alleging the said employers to be a partnership known as National Hosiery Mills, composed of William Myers, Isadore Myers, and Earhardt Myers. She charged solidary liability in the said alleged partnership and its three component members.

This second suit also reached this court, and on October 19, 1936, we rendered a decree in favor of defendants, holding that, although Bearard was a part time employee of the said partnership, he was not acting at the time of the accident within the scope of his employment by the said partnership. See Calamia v. Myers et al. (La.App.) 169 So. 900.

The present suit represents a third attempt by Mrs. Vachetta to secure judgment against the employers of Bearard, and this time she alleges that at the time of the accident the said Bearard was acting within the scope of his employment by Mrs. Mayer, the mother, and the three brothers, though not against the latter as members of the partnership known as National Hosiery Mills, but individually, and this time plaintiff spells differently the family name of the defendants, William Mayer, Isadore Mayer, and Erhard Mayer, and Mrs. Pauline Mayer.

In addition to the defenses which concern the merits of the controversy—that is to say, the responsibility for the collision—defendants present several preliminary contentions which require consideration. They plead the prescription of one year, which, under R.C.C. art. 3536, is applicable where the suit is one for damages " * * * resulting from offenses or quasi offenses," and they plead estoppel, contending that plaintiff, having, in the earlier suits, alleged first the corporation and then the partnership to have been the employer of Bearard, is estopped to contend that the present defendants were the employers. They also file exceptions of no cause of action, and of vagueness, and a plea of misjoinder of parties defendant.

All of the pleas and exceptions were referred to the merits in the court below and, after a trial on the merits, judgment was rendered in favor of plaintiff solidarily against the three brothers in the sum of $150. No reference was had in the judgment to the fourth defendant, Mrs. Pauline Mayer. From this judgment the three brothers have appealed. Plaintiff has answered the appeal praying for an increase to $300 and also praying that Mrs. Mayer, the mother, be included as a judgment debtor.

■ The plea of estoppel is not well founded, for, while it is true that plaintiff alleged in her earlier suit facts inconsistent with her present allegations concerning the present employment of Bear-

ard, those allegations in the earlier suit were unsuccessfully made. It is now well settled that in such case there results no estoppel to allege the true facts. See Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A.1915A, 200, Ann.Cas.1915C, 717; Maddox v. Robbert, 158 La. 394, 104 So. 183.

■ We have considered the conclusion reached by the Court of Appeal for the First Circuit in H. J. Smith & Sons v. Joiner, 172 So. 785 and also a case· which they cite therein, Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489. The Tircuit Case is authority for our view, for there it was held that even allegations successfully made do not necessarily create an estoppel in favor of others than those who were parties to the original suit. That case in no way alters the rule that allegations previously unsuccessfully made may not form the basis of a judicial estoppel.

The plea of prescription of one year will be next considered.

■ It is true that before the present suit was filed more· than one year had elapsed since the injuries were received, for the accident occurred on May 17, 1935, and this suit was not filed until November 9, 1936. (Incorrectly set forth in the transcript of docket entries as November 9, 1937). But plaintiff relies upon the alleged interruption of ·prescription which she argues resulted from the filing of the second of the earlier suits, which was against the partnership, and also against the three brothers solidarily; the three brothers having been personally served. So far as the mother, Mrs. Pauline Mayer, is concerned, obviously no interruption of prescription resulted from the filing of the suit against the partnership and the individual members, who were her sons, therefore, even conceding that the answer filed by plaintiff to the appeal taken by the other defendants could be effective as against her, we cannot but hold that as to her the right, if it ever existed, was lost by prescription. In Agnelly v. ·Goodheit, 6 La.App. 121, in a syllabus written by the court, we said:

"Suit against and service upon Edward Parelli will not interrupt prescription against Manuel Parelli, notwithstanding the fact that Manuel is the father of Edward Parelli and resides in the same house with him."

■ To the fact that, in the suit against the partnership, the three brothers were cited under the name "Myers," whereas in the present suit they are sued under their correct name, "Mayer," we attach no importance in so far as the interruption is concerned. It is well settled that, where citation in an earlier suit is relied upon as an interruption of prescription, slight inaccuracies as to name, or errors in initials, are of no importance, if, in reality, the person served with citation in the first suit was the person against whom judgment was sought in the second. Blakeney v. Easterwood, 3 La.App. 796.

■ That the former suit was primarily against the alleged partnership, and not against the individuals except as members thereof, does not, we think, destroy the effect, on the running of prescription, of the citations issued in that suit. The three defendants in the case at bar were personally served with citation in the earlier suit and each was apprised of the fact that judgment was sought against him as a result of the occurrence of the accident in question. Each was thereby made aware of all of the allegations on which plaintiff now relies and that is all that is necessary to interrupt prescription.

There are many cases which authorize the view that service on an individual in one capacity will interrupt prescription which would otherwise accrue against him even though it should later develop that he was not liable in the capacity in which he had first been sued. In Keith v. Texas & P. Ry. Co., 171 La. 757, 132 So. 223, a widow brought suit as widow. It was held that this interrupted prescription against her, although the action could have been brought in her capacity as personal representative of her deceased husband.

In Quin v. Kansas City Southern R. R. Co. (D.C.) 8 F.Supp. 78, it was held that a suit by the personal representative of the deceased interrupts prescription against the widow, even though the original suit by the personal representative should not have been brought because of the absence of right in the said personal representative.

In Anding v. Texas & P. Ry. Co., 158 La. 412, 413, 104 So. 190, it was held that, in a suit against a corporation, service on the receivers interrupted prescription and that, when the suit against the corporation could not be maintained, the interruption of prescription permitted suit against the receivers.

Counsel for defendants state that the exception of no cause of action is based on the alleged estoppel said to result from the allegation in the earlier suit concerning the employment of Bearard. We have already discussed the plea of estoppel, and from what we said it necessarily follows that the exception of no cause of action cannot be sustained.

■ The exception of vagueness is directed at the failure of plaintiff to allege which of the defendants was the employer of Bearard. But the petition alleges that all were the employers and we think that that is all that was necessary.

■ The plea of misjoinder of parties defendant is based on the theory that only one of the parties could have been the employer of Bearard and that, therefore, all of the others were improperly joined. We see no reason why an employee may not at one time be in the employ of several persons, all of whom may be interested in the work in which the employee is engaged.

The facts concerning the employment of Bearard are interesting. He was primarily a house servant and had for some time been employed at the residence of Mrs. Mayer, the mother, and her three sons, all of whom lived together. He was also employed for a part of his time at the Hosiery Mill, which was owned by the three brothers and operated by them as a partnership venture. It was the custom for him to devote a part of his time to driving an automobile owned by the three brothers, in which they often sent their mother for rides around the city and nearby countryside. The mother herself had no income of any kind or character. Some of the furniture in the residence had formed part of the community which had existed between her and her predeceased husband, but the remainder of the furniture had been bought by the sons, who, as we have said, entirely supported the mother in the residence which she operated for them. The contention of defendants is that it was the residence of the mother and that the sons had no legal connection therewith, except as boarders in the home. Plaintiff maintains, however, that the effect of the relationship was

that the sons maintained the home, and that the mother was merely supported by them, and that they were, therefore, responsible for negligent acts of Bearard, the employee in the home. On the day of the accident Bearard had been ordered to leave the Hosiery Mills and to repair to the home of the defendants and to bring Mrs. Mayer, in the family automobile, from the residence to the Hosiery Mill that she might take lunch with her sons. In going to the residence to get Mrs. Mayer, Bearard used his personal automobile. Had he reached the residence he would have left his automobile there and, as we have said, would have brought Mrs. Mayer to the mill in the family car, which was owned by the three brothers. It is argued that, in going from the mill to the residence, Beardard stepped out of character as an employee of the mother or the three brothers, and that he would not have re-entered that employ until his arrival at the residence.

We do not construe the relationship in this way. It appears to us that when Bearard left the mill, where he was employed by the partnership, he did so to perform a service for the three brothers and that he then immediately stepped from his character as an employee of the partnership operating the mill into his character as an employee of the three brothers, and that, in going for their mother, he was performing a service as their employee.

We have given some thought to the suggestion that in the operation of their home, the three brothers were engaged in another partnership enterprise distinct from that which they organized for the operation of the hosiery mill, and that, therefore, Bearard, at the time of the accident, was performing services for this peculiar partnership, and that, therefore, the brothers might be sued only through this partnership. We feel that that relationship in the operation of their joint residence should not be construed as a partnership, which, by reason of its character as an ordinary one, would have made each liable only for his virile share of the debts and obligations, and we believe that the relationship which existed made Bearard an employee of each of the three brothers, with the result that, when he was engaged in performing services in which each of the three brothers was interested, each was liable for the results of negligent acts committed by Bearard within the scope of his employment.

We consider now the facts surrounding the accident. We have already held in the first of the cases referred to that Bearard was at fault. But in that case we did not discuss the possible contributory negligence of the injured plaintiff because we found that there had been no plea of contributory negligence. In the case at bar, not only is it charged that plaintiff herself was guilty of contributory negligence, but it is also charged that the driver of the automobile in which she was riding had loaned her the car for a purpose of her own and had agreed to drive it, and that, therefore, he was acting as her employee or servant, and, consequently, his negligence was chargeable to her. Be that as it may, we have examined the record carefully and have reached the conclusion that, as Billo approached the corner at which the accident happened, he exercised all due care and caution, and that, in spite of such care and caution on his part, the car driven by Bearard crashed into the rear of his car, and that the said accident resulted solely from the negligence of Bearard.

Since, then, as we have held, he was acting within the scope of his employment by the three Mayer Brothers, it follows that they are solidarily responsible for the results of his negligence.

Nor is it of importance that, at the time, Bearard was driving his own automobile. The three brothers were well aware of the fact that, in going to and from the residence, he often used his own automobile, and, in permitting him to go for their mother in his own car, they made themselves responsible for his negligent acts in the operation of his own car.

We have again examined the evidence touching upon the extent of plaintiff's injuries and feel that the allowance originally made, $150, is proper.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed, at the cost of appellants.

Affirmed.

WESTERFIELD, Judge (dissenting in part).

I believe that the maintenance of the home by the three Mayer brothers constituted an ordinary partnership and, therefore, their liability could not exceed their virile share.

To the extent mentioned I respectfully dissent from the majority view.

